MANDATE

N.Y.S.D. Case #
13-cv-2282(KPF)

18-650-cv
Fogel v. Vega

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of December, two thousand eighteen.

PRESENT: REENA RAGGI,
GERARD E. LYNCH,
CHRISTOPHER F. DRONEY,
*Circuit Judges*.

_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Jan. 16, 2019

MICHAEL FOGEL,

*Plaintiff-Appellant*,

v.                                                                              18-650-cv

ERNESTO VEGA, WAL-MART DE MEXICO, SAB
DE CV, WAL-MART STORES INC., SCOT RANK,

*Defendants-Appellees*.
_____

FOR APPELLANT:          THOMAS J. MCKENNA (Gregory M. Egleston, *on the brief*), Gainey McKenna & Egleston, New York, NY.

1

MANDATE ISSUED ON 01/16/2019

| | |
|---|---|
| FOR APPELLEES: | PETER A. WALD (Melissa Arbus Sherry, Sarah A. Tomkowiak, Matthew J. Peters, *on the brief*), Latham & Watkins LLP, Washington, DC. |

Appeal from the decision of the United States District Court for the Southern District of New York (Failla, *J.*) entering judgment after granting Defendants' motion to dismiss and denying Plaintiff's motion to amend the judgment.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** and the district court's denial of the motion to amend the judgment is **AFFIRMED**.

Plaintiff Michael Fogel appeals from the district court's decisions entered on February 27, 2017, and February 21, 2018. On appeal, he contends that the district court erred in dismissing his claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and that the district court abused its discretion in subsequently denying him leave to file a Third Amended Complaint. We affirm the district court on both decisions. We assume the parties' familiarity with the facts and record of prior proceedings, which we briefly summarize as necessary to explain our decision.

I. **Background**

Defendant Wal-Mart de Mexico ("Wal-Mex") is a subsidiary of Defendant Wal-Mart Stores Inc. ("Wal-Mart") that owns and operates retail stores in Mexico and Central America.[1] There are also several individual defendants who held various roles at Wal-Mex and Wal-Mart. Plaintiff's Second Amended Complaint ("SAC") alleges that beginning in 2003, top executives at Wal-Mex engaged in widespread bribery of various local government officials to secure building permits and other local government approvals to build new stores in Mexico. He also alleges that officials of Wal-Mart were aware of the scheme as early as 2005. After an internal Wal-Mex investigation of the scheme in 2005 and 2006, Wal-Mart concluded that there was no "evidence or clear indication of bribes paid to Mexican government authorities with the purpose of wrongfully securing any license or permits." Joint App'x 210. Almost six years later, on April 21, 2012, however, the *New York Times* published an extensive article entitled "Wal-Mart Hushed Up a Vast Mexican Bribery Case," which gained widespread public attention. The article indicated

---

1 Wal-Mex is more specifically a subsidiary of Wal-Mart International, a division of Wal-Mart.

2

that extensive bribery had indeed occurred. The article also suggested that the scheme violated the Foreign Corrupt Practices Act. On April 23, 2012, Congress announced an investigation into the allegations of bribery by Wal-Mex officials.

According to the *New York Times* article the bribery allegedly occurred through local intermediaries, known as *gestores*,[2] through whom Wal-Mex bribed mayors, city council members, urban planners, and low-level bureaucrats to issue land use permits and related licenses. The article further stated that *gestores* most involved in the Wal-Mex scheme were two private lawyers, working under the direction of the general counsel of Wal-Mex, Jose Luiz Rodriguezmacedo, and others. The bribes paid by Wal-Mex, according to the article, totaled more than $24 million, and allowed Wal-Mex to quickly obtain "zoning approvals, reductions in environmental impact fees and the allegiance of neighborhood leaders." Joint App'x 1068–70. The purpose of securing rapid development and expansion of the Wal-Mex stores was to stop or discourage Wal-Mex's competitors from building their own new stores.

Fogel brought this putative class action in the United States District Court for the Southern District of New York in April, 2013, on behalf of all purchasers of American Depositary Receipts ("ADRs") of Wal-Mex between December 8, 2011 and April 24, 2012. After the *New York Times* article was published, Wal-Mex's ADRs fell by 12.2% on April 23, 2012, and a further 4.3% on April 24, 2012.[3] Fogel alleges that, as a result of Defendants' scheme and misrepresentations, Wal-Mex ADRs were overvalued during the class period.

Fogel, in his SAC, alleges a number of statements that form the basis of his claims under Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5 and Section 20(a). The statements come from: (i) a series of Wal-Mex press releases from December 2011 through April 2012 claiming compliance with legal requirements and stating sales results; (ii) Wal-Mex's 2011 Annual Report, and an Audit Report issued on February 20, 2012, that stated, "In the performance of our duties, we have maintained strict compliance . . . with the Mexican Securities Market Law . . . ," Joint App'x 230, "[H]onesty and integrity continue being non-negotiable core values," Joint App'x 229, "We analyzed the status of the internal control system and were informed in detail of the Internal and Independent Audit programs and work development, as well as the main aspects requiring improvement and follow-up on implemented preventive and corrective measures. Therefore, our opinion

---

2 *Gestores* means "managers" or "facilitators" in Spanish. *Gestor (n.)*, Merriam Webster Spanish Central, http://www.spanishcentral.com/translate/gestor (last visited Dec. 17, 2018).
3 The original complaint limited the class period to February 21, 2012, through April 22, 2012, but Plaintiff expanded the class period in his FAC.

3

is that all effectiveness requirements have been properly met for the Company to operate under a general control environment," Joint App'x 261, and "Based on work performed and a report from the independent auditors, it is our opinion that the accounting and reporting policies, and criteria followed by the Company are adequate and sufficient and have been consistently applied. As a result, the information submitted by the CEO reasonably reflects the Company's financial position and results;" Joint App'x 270, (iii) Wal-Mex's website, which stated, "We do not tolerate, permit, or engage in bribery, corruption or unethical practices of any kind," Joint App'x 216, (iv) Wal-Mex Annual Reports from 2004 through 2010; and (v) Wal-Mart's Form 10-Q report of December 8, 2011 for the third quarter of the fiscal year 2012.

In its February 27, 2017 opinion, the district court granted the Defendants' motion to dismiss. The district court examined first the Section 10-b and Rule 10b-5 allegations and determined that Section 804 of the Sarbanes-Oxley Act of 2002 governs the timeliness of these claims. *See* 28 U.S.C. § 1658(b). The district court then concluded that the statute of repose in Section 804 barred any claims based on misrepresentations prior to April 5, 2008, including those based on the Wal-Mex 2004, 2005, or 2006 Annual Reports. The district court further concluded that all claims raised for the first time in the First Amended Complaint ("FAC") or SAC were barred to the extent that they were based on alleged violations prior to December 8, 2009, or April 7, 2011, but the court found that the Original Complaint's allegations sufficiently alleged that the statute of repose did not bar Fogel's claims with regards to the 2007, 2008, and 2009 Annual Reports. The district court also concluded that the statute of limitations barred the new claims raised for the first time in the amended complaints because the later-added claims do not relate back to the Original Complaint under Federal Rule of Civil Procedure 15, including those against two new Defendants (Scot Rank and Wal-Mart), the new claims against the original Defendants, (Wal-Mex and Ernesto Vega), and the claim relating to the Wal-Mex press releases from January through April 2012.

The district court dismissed the remaining claims that were not time-barred for failure to state a claim under Section 10(b), Section 20(a), and Rule 10b-5 because Fogel had not adequately pleaded scienter for Vega, and he pleaded insufficient facts to impute scienter to Wal-Mex (imputed from Vega or another employee). The district court also held that Fogel had failed to plead actionable misrepresentations or omissions because all of the statements from the Wal-Mex Annual Reports and its website are "inactionable, immaterial puffery," he alleged no facts demonstrating that the statements were false, and Fogel had failed to adequately plead scheme liability. Special App'x 29, 35–37, 39. The district court also found that because it had concluded that there was no 10b-5 violation, there could be no liability for control persons under Section 20(a). Finally, the district court denied Fogel's

4

motion for leave to amend his complaint. The district court held that a proposed Third Amended Complaint would be futile because it would not remove the time bar for many of the claims, and it also would not change the core of the remainder of the claims.

The district court's February 21, 2018, decision denied Fogel's motion to alter the judgment to once again attempt to file a Third Amended Complaint concluding that none of the grounds for proper reconsideration applied. The district court also held that Fogel had not presented any allegations based on newly discovered evidence that would have altered the court's decision and that the proffered evidence was discovered prior to the decision on the original motion to dismiss.

Fogel appealed these determinations. In this summary order, we address those determinations only to the extent required to affirm the district court's dismissal. We need not address the district court's conclusions concerning the timeliness of the claims because, as is discussed below, Fogel does not challenge those determinations as to many of the misrepresentations alleged in the SAC, and the remainder of the allegations are not actionable.

## II. Abandoned Claims

As a preliminary matter, Plaintiff has not challenged the district court's determinations that "statements made prior to the December 8, 2011 start of the class period are inactionable" due to untimeliness, *Fogel*, 2017 WL 751155 at *17, and that the statement from Wal-Mart's Form 10-Q was also time-barred. *Id.* at *13. Thus any challenges based on the contents of the 2004 through 2010 Wal-Mex Annual Reports and Wal-Mart's Form 10-Q are deemed waived. *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief.").

Plaintiff thus continues to press only the following alleged misrepresentations on appeal: (i) statements regarding Wal-Mex's honesty, integrity, and ethical behavior in Wal-Mex's December 9, 2011 Press Release and on its website; (ii) statements regarding compliance with the Mexican Securities Laws in Wal-Mex's 2011 Annual Report and in the 2012 Audit Letter; (iii) statements regarding Wal-Mex's "internal controls," also in the same Wal-Mex 2011 Annual Report and 2012 Audit Letter; and (iv) statements regarding Wal-Mex's financial performance and increased sales in a series of press releases in January through April of 2012. We therefore discuss only these alleged misrepresentations below.

5

### III. Actionable Misstatements

Under Section 10(b) of the Securities Exchange Act, it is unlawful for a person "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j. Rule 10b-5, which was promulgated by the SEC pursuant to Section 10(b), provides that, "in connection with the purchase or sale of any security," a person may not "employ any device, scheme, or artifice to defraud[;] . . . make any untrue statement of a material fact or . . . omit to state a material fact necessary in order to make the statements made . . . not misleading." 17 C.F.R. § 240.10b-5(a), (b). Furthermore, in connection with such a transaction, a person may not "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." *Id.* § 240.10b-5(c). While there is no explicit provision in Section 10(b) for a private right of action, the Supreme Court has recognized an implied private right of action under Section 10(b) and Rule 10b-5. *Superintendent of Ins. of State of N.Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 13 n.9 (1971).

A plaintiff bringing a private suit under Section 10(b) and Rule 10b-5 must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *GAMCO Inv'rs, Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214, 217 (2d Cir. 2016) (per curiam) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)).

We have held that, for an alleged misstatement to be "material" under §10b, it "must be sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2014). We have specifically held that "general statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery,' meaning they are 'too general to cause a reasonable investor to rely upon them.'" *Id.* at 183 (quoting *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009)). However, "[t]his is not to say that statements about a company's reputation for integrity or ethical conduct can never give rise to a securities violation." *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 98 (2d Cir. 2016). "[F]or example, a company's specific statements that emphasize its reputation for integrity or ethical conduct as central to its financial condition or that are clearly designed to

6

distinguish the company from other specified companies in the same industry" may suffice. *Id*.

Fogel argues that because the statements about Wal-Mex's integrity and ethics were "important" to its "business model," they are not immaterial puffery. Appellant Br. 39–40. Moreover, Fogel argues that the statements are sufficiently specific. We disagree and conclude that the district court was correct in its analysis of these statements. General statements about honesty and integrity, including those about general compliance with the law, are not sufficient to state a claim under Section 10(b) and Rule 10b-5 under these circumstances. *See ECA, Local 134*, 553 F.3d at 206 ("Plaintiffs conflate the importance of a bank's reputation for integrity with the materiality of a bank's statements regarding its reputation. While a bank's reputation is undeniably important, that does not render a particular statement by a bank regarding its integrity per se material.") For that reason, the district court did not err in concluding that Plaintiff has not alleged factual circumstances that would lift these generalized claims of honesty and integrity above the level of mere puffery.

## IV. Failure to Plead Falsity

Under the heightened pleading standards applied to claims under Rule 10b-5, plaintiffs "must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) (interpreting 15 U.S.C. § 78u–4(b)). All of the identified statements as to the ethics and integrity of Wal-Mex and its supposed compliance with Mexican Securities Laws also fail to support a claim because the Second Amended Complaint does not sufficiently allege the falsity of the statements. Although Fogel argues falsity in his brief, that is not sufficient because the allegations of falsity are not contained in the SAC. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (declining to consider § 10(b) allegation made in brief but not complaint).

As to the statements concerning Wal-Mex's internal controls, Fogel does not meet the standard for actionable opinion statements under *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318 (2015). Under *Omnicare*, a plaintiff is required to show a conflict between the opinion statements and "what a reasonable investor would take from the statement itself" to establish that the statements are misleading based on an omission. 135 S. Ct. at 1329. Those opinions, made in 2012 about the controls in place at that time, do not conflict with the allegation that bribery occurred many years before. For these reasons, the district court did not err in finding that these statements were not materially false.

7

Finally, as to the statements about Wal-Mex's financial performance, Fogel has not alleged that the statistics in the press releases were false. Rather, he alleges that they "misstated the nature" of Wal-Mex's "business operations and expenditures, and intentionally concealed the Company's illegal actions." Appellant Br. 20 (quoting A. 44) (emphasis omitted). It is axiomatic that companies "do not have a duty to disclose uncharged, unadjudicated wrongdoing. *City of Pontiac*, 752 F.3d at 184. Accurately reported financial statements thus cannot become actionable simply because companies do not simultaneously disclose some wrongdoing that may have contributed to the company's financial performance. *See In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 401 & n.3 (6th Cir. 1997) ("[A] violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data" absent allegations of the falsity of that data). Thus, we conclude that the statements regarding financial performance are not actionable.

## V. Scheme Liability

"Scheme liability" derives from subsections (a) and (c) of Rule 10b-5, which prohibit schemes to defraud investors. 17 C.F.R. § 240.10b-5(a), (c). Plaintiff argues that the alleged "multi-year criminal enterprise to bribe government officials to open new stores to drive growth, followed by a cover-up to conceal the criminal activity, is a classic example of a scheme." Appellant Br. 52.

Fogel has not alleged an actionable scheme. First, he did not make any allegations of the bribery continuing past 2005 that are not speculative, which presents a timeliness problem. Instead, he points to an allegation that in December 2005 there was evidence that the *gestores* were still being used to facilitate bribery of local officials. Second, Fogel claims that Wal-Mex's store openings decreased "significantly after 2012 as a direct result of the U.S. Department of Justice bribery investigation," Joint App'x 189, that "[t]he high percentage 'of sales' and 'comp store sales' at Wal-Mex from 2005 through 2012 were the result of new store openings occasioned by bribes and corruption," Joint App'x 258–59, and that "Defendants' relentless push to open new stores and increase sales growth continued and only stopped when the corruption/bribery was exposed in April 2012." Joint App'x 271.

These allegations are speculative, as there is no support for Fogel's conclusion that the reduction in store openings was because Wal-Mex could no longer engage in bribery in 2012. Fogel was required to plead these facts with specificity and particularity under Rule 9(b), and has failed to do so. *See Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 129 (2d Cir. 2011) (stating that Rule 9(b) applies to claims under Section 10(b) that sound in

8

fraud); *see also Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (stating that plaintiffs cannot "base claims of fraud on speculation and conclusory allegations").

Moreover, Fogel fails to allege a deceptive act, aside from the misstatements he alleges are actionable under 10b-5(b). Because subsections (a) and (c) specify various means of alleging a fraud (device, scheme, or artifice to defraud and act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, respectively), it would be incorrect to conclude that misstating a material fact is also actionable under those subsections. We have treated subsections (a) and (c) as distinct from (b) when looking at various 10b-5 claims. *See, e.g., VanCook v. SEC*, 653 F.3d 130, 137–41 (discussing distinctions between the subsections and holding that defendant violated all three where defendant designed and operated a scheme to allow customers to engage in 'late trading' of mutual funds and also made numerous actionable misrepresentations to conceal his scheme). Likewise, numerous district courts have held that scheme liability under subsections (a) and (c) of Rule 10b-5 "hinges on the performance of an inherently deceptive act that is distinct from an alleged misstatement." *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011). For that reason, we agree and affirm the district court on the scheme liability decision.

## VI. Leave to Amend

This Court reviews the denial of a motion for leave to amend for an abuse of discretion. *Jones v. N.Y. State Div. of Military & Naval Affairs,* 166 F.3d 45, 49 (2d Cir. 1999). If that denial was based on an interpretation of law, we review that legal conclusion *de novo*. *Id.* Leave to amend a complaint should be freely given when justice so requires. Fed. R. Civ. P. 15(a). "Where, however, a party does not seek leave to file an amended complaint until after judgment is entered, Rule 15's liberality must be tempered by considerations of finality." *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) (per curiam). Furthermore, a district court may deny leave to amend when such amendment would be futile. *See, e.g., Foman v. Davis,* 371 U.S. 178, 182 (1962); *Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 246 (2d Cir. 1997).

We conclude that the district court did not err in refusing to allow Fogel to file a Third Amended Complaint. Fogel failed to allege valid claims in each of his prior complaints. Moreover, in its decision on the Rule 59(e) motion, the district court found that Fogel also had not alleged any new facts or law that the district court had overlooked, and that the new evidence was available "nearly three weeks before the [district court] issued its decision." Spec. App. 55, 58 (emphasis omitted). Thus, Fogel had ample opportunity to seek to file an amended complaint prior to the entry of final judgment but chose not to do

so. Finally, we note that a Third Amended Complaint would be futile because it could not remedy the deficiencies of materiality or scheme liability discussed above.

For the reasons stated above, we **AFFIRM** the district court's decision and resulting judgment.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk of Court

*/s/ Catherine O'Hagan Wolfe*

10

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit
*/s/ Catherine O'Hagan Wolfe*